**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| M.O., | : | **Civil Action No. 24-579 (SRC)** |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF | : |  |
| SOCIAL SECURITY, | : |  |
| Defendant. | : |  |
|  | : |  |
|  | : |  |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff M.O. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from the Commissioner's redetermination decision that Plaintiff, who had received supplemental security income benefits based on disability as a child, no longer met the requirements for disability upon attaining majority. A hearing was held before ALJ Kevin Kenneally (the "ALJ") on November 18, 2022, and the ALJ issued an unfavorable decision on February 8, 2023. Plaintiff sought review of the unfavorable decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's

decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of February 8, 2023, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform work at all exertional levels, with certain nonexertional limitations. At step four, the ALJ also found that Plaintiff had no past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

Plaintiff makes two arguments on appeal: 1) the ALJ's decision at step three is not supported by substantial evidence; and 2) at step four, the residual functional capacity ("RFC") determination is not supported by substantial evidence.

Plaintiff's case on appeal suffers from two principal defects: 1) its failure to deal with the issue of the burden of proof at the first four steps of the sequential evaluation process; and 2) its failure to deal with the harmless error doctrine. As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

As to the harmless error doctrine, the Supreme Court explained its operation in a similar procedural context in Shinseki v. Sanders, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination. The Court stated: "the burden of showing that an error is

harmful normally falls upon the party attacking the agency's determination." <u>Id.</u> In such a case, "the claimant has the 'burden' of showing that an error was harmful." <u>Id.</u> at 410.

Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful. At the first four steps, this requires that Plaintiff also show that, but for the error, she might have proven her disability. In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in her favor, based on the existing record, she is quite unlikely to show that an error was harmful.

Plaintiff first challenges the step three determination that Plaintiff did not meet or equal any of the Listings. The subheading for this section of Plaintiff's brief states:

> AT STEP 3 OF THE SEQUENTIAL EVALUATION THE DECISION
> FAILS TO COMBINE PLAINTIFF'S THREE SEVERE MENTAL
> IMPAIRMENTS AND ISSUES IMPERMISSIBLE FINDINGS WHICH
> IGNORE THE STANDARD OF EVALUATION SET FORTH IN THE
> REGULATIONS

In short, Plaintiff argues that the ALJ erred at step three, but makes no demonstration that, but for the alleged errors, he might have proven that he meets or equals a specific Listing. Plaintiff thus fails to meet <u>Shinseki</u>'s requirement that he bears the burden of showing that the alleged error was harmful.

As to Plaintiff's arguments that the ALJ erred at step three, Plaintiff first contends that the ALJ failed to combine Plaintiff's "three severe mental impairments."[1] The first sentence of the ALJ's decision at step three states: "The severity of the claimant's mental impairments,

---

[1] At step two, the ALJ determined that Plaintiff has two severe impairments, autism spectrum disorder and attention deficit hyperactivity disorder (ADHD). (Tr. 19.) Later in the brief, Plaintiff admits that the correct number of step two severe impairments is two, not three. (Pl.'s Br. at 10.)

considered singly and in combination, do not meet or medically equal the criteria of listings 12.10 and 12.11." (Tr. 19.)  The record shows two severe impairments at step two and the ALJ stated that he considered them in combination.  Plaintiff bears the burden of proof of disability at step three and has not shown that there is evidence of record that supports a determination that the combination of the two severe impairments meets or equals a specific Listing.

Plaintiff's challenge to the step three determination focuses on the ALJ's discussion of the paragraph B criteria common to Listings 12.10 and 12.11, pursuant to Listing 12.00 (E) and (F).  In short, the ALJ found a marked level of limitation in only one of four areas of mental functioning, and Plaintiff argues generally that at least one other area of mental functioning should have received a rating of a marked level of limitation.  Plaintiff does not, however, point out any specific piece or pieces of evidence that, he contends, support a rating of a marked level of limitation for a specific area of mental functioning.

Plaintiff criticizes the ALJ's discussion of these step three determinations as not sufficiently "articulated and comprehensible." (Pl.'s Opp. Br. at 23.)  The Court has reviewed the ALJ's determinations at step three and finds them to be not only articulated and comprehensible, but also supported by substantial evidence.  For example, consider the ALJ's explanation of the rating for the area, "adapting or managing oneself:"

> As for adapting or managing oneself, the claimant has experienced a moderate limitation. In October and December 2020, he reported that he rarely went outside, did not do any shopping, and did not handle his own finances. More often than not, he needed reminders to go places. He stated that he had problems getting along with others because of mood swings, did not talk to people most of the time, and rarely spent time with others. He stated that he did not handle stress well, held most of his feelings inside, and was tense most of the time. He noted that he was never in the mood to eat, and he sometimes stayed awake at night due to hatred or depression. Indeed, later, in March 2021, the claimant reported that, if he could change one thing, he would find ways to make himself happier, and his

4

fear for the future was not becoming more social with people (Exhibits CDR-B23E, CDR- B26E, CDR- Bl5F). Despite his complaints, the claimant reported the retained mental capacity to perform personal care tasks and take medications with reminders, and to attend classes online, prepare simple meals, and take out the garbage and recycling. Despite reported problems with getting along with others, he could go outside alone, got around by walking, sometimes watched television with his sisters, and went with his mother/sister for laundry. Further, despite his reported short attention span, he stated that he followed written and verbal instructions well and finished what he started. Subsequently, in March 2021, the claimant reported that he enjoyed watching television with his family and he helped with chores at home whenever his mother needed help, but mostly continued to take out the trash/recycling. The claimant reported having a few friends in and outside of school and noted that, when he spent time with them, they usually played games. In addition, the claimant stated that he enjoyed going to the park in his free time. The claimant reported the retained mental capacity to get along with peers and teachers in school, complete most of his homework timely and independently, and ask for assistance when he needed it (Exhibits CDR-F23E, CDR-B26E, CDR-B15F).

(Tr. 21.)  The Court finds this explanation to be clear, well-articulated, well-supported by identified, specific evidence of record, and easily comprehensible.  Plaintiff does not identify specific evidence that supports a determination that, in the area of adapting or managing oneself, supports a rating of a marked level of limitation.  As to the Listing 12.00 paragraph B criteria, the ALJ's determinations are supported by substantial evidence.  Moreover, the DDS consultant assessed all four areas of mental functioning and found no limitation greater than moderate for any aspect of them.  (Tr. 140-142.)  The ALJ's determination at step three is supported by substantial evidence.

Plaintiff challenges the residual functional capacity determination in a similar way, as insufficiently justified in general.  Again, the Court notes that Plaintiff bears the burden of proof of disability at the first four steps of the sequential evaluation process, and Plaintiff has not pointed to specific evidence of record which would support a more limited residual functional capacity determination.  The bottom line is that the ALJ's residual functional capacity

5

determination is supported by the DDS consultant's assessment. The DDS consultant assessed Plaintiff's mental residual functional capacity and concluded that it is:

> Moderately impaired. In a work-like setting with short, simple instructions and simple interpersonal demands, CL would be able to execute instructions and simple tasks with adequate CPP, relate adequately, and adapt to minor changes in a routine.

(Tr. 142.) This constitutes substantial evidence which supports the ALJ's RFC determination.

At several points, Plaintiff challenges the RFC determination by making the argument that, in short, Plaintiff met the criteria for a determination of disability before age 18, and how can he suddenly now be able to work? The problem for Plaintiff is that the ALJ explained the legal framework that has led to this result:

> Section 1614(a)(3)(H) of the Social Security Act (the Act), provides that individuals who are eligible for supplemental security income benefits as children (individuals who have not attained age 18) for the month preceding the month in which they attain age 18, must have their disability redetermined under the rules for disability used for adults. Section 1614(a)(3)(H) of the Act also provides that the medical improvement review standard in section 1614(a)(4) does not apply to disability redeterminations at age 18. Instead, the definition of disability used for adults who file new applications for supplemental security income benefits based on disability must be applied.

(Tr. 18.) Plaintiff has not disputed the accuracy of this statement of the applicable legal framework. Plaintiff is now an adult and the law requires that his disability be redetermined under the rules for adults. Again, Plaintiff bears the burden of proof of disability at the first four steps of the inquiry, and Plaintiff does not cite medical evidence from his adulthood that establishes a disabling level of impairment. Crucially, Plaintiff does not challenge the ALJ's interpretation of the law that excluded consideration of the medical evidence from childhood. Thus, even if Plaintiff had succeeded in persuading the Court that the ALJ erred at steps three or four – and Plaintiff has not done so –, Plaintiff has not shown prejudice, as required by <u>Shinseki</u>.

6

Plaintiff has failed to persuade this Court that the ALJ erred in the decision, or that he was harmed by any errors.  Plaintiff has not shown that the ALJ erred, has not shown that the evidence supported a decision in his favor, and has made no demonstration of prejudice as required by Shinseki.  This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

        s/ Stanley R. Chesler
        STANLEY R. CHESLER, U.S.D.J.

Dated: April 24, 2025